UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
                                  :

RONALD MERRIWEATHER,           :
                                    :

                     Plaintiff, :
                                    :

              v.                     :
                                    :

CITY OF NEW YORK,                 :
                                    :

                     Defendant. :
                                    :
-----------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 5, 2015

12 Civ. 5258 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

      On March 27, 2010, between 7:00 and 7:30 a.m., police officers from the New York City Police Department (the "NYPD") kicked open the door to the bedroom of Plaintiff Ronald Merriweather, located in the second-floor apartment of 3321 Seymour Avenue in the Bronx, New York.  The officers were executing a search warrant for that apartment for "crack/cocaine" and other evidence of the possession or distribution of such drugs.  During the search, police recovered a jewel-handled knife and a small amount of marijuana, both of which belonged to Plaintiff.  The officers arrested Plaintiff for possession of the marijuana, a controlled substance in New York, although the criminal charges were later dismissed.

      Plaintiff subsequently brought suit against the City of New York and NYPD Detective Nelson Mendez, the latter of whom had obtained the search warrant upon a sworn affidavit.  Detective Mendez has since been dismissed

from the case.  Plaintiff has alleged deprivation of his civil rights and other

violations under 42 U.S.C. §§ 1983 and 1985 and New York State law.

Defendant City of New York ("Defendant" or the "City") now moves for

summary judgment as to all of Plaintiff's claims.  For the reasons set forth in

the remainder of this Opinion, the Court grants Defendant's motion in its

entirety.

## BACKGROUND[1]

### A.   Factual Background

### 1.   Plaintiff's Residence

In March 2010, Plaintiff was renting a one-bedroom "unit" within the

second-floor apartment at 3321 Seymour Avenue, Bronx, New York.  (Def. 56.1

---

[1]   The facts set forth herein are drawn from Defendant's Statement of Undisputed Facts
Pursuant to Local Civil Rule 56.1 ("Def. 56.1"); Plaintiff's Response to Defendant's
Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Pl. 56.1 Opp."); the
Declaration of Arlen S. Yalkut in Opposition to Defendant's Motion for Summary
Judgment ("Yalkut Decl.") and the exhibits attached thereto (citations to the exhibits to
this submission are made using the pagination imposed by the Court's electronic case
filing ("ECF") system); and Plaintiff's deposition testimony ("Merriweather Dep.").  For
convenience, Defendants' opening brief is referred to as "Def. Br.," Plaintiff's opposition
brief as "Pl. Opp.," and Defendants' reply brief as "Def. Reply."

Citations to a party's Local Civil Rule 56.1 Statement incorporate by reference the
documents cited therein.  Where facts stated in a party's Local Civil Rule 56.1
Statement are supported by testimonial or documentary evidence, and denied with only
a conclusory statement by the other party, the Court finds such facts to be true.  *See*
S.D.N.Y. Local Rule 56.1(c)-(d).

In Plaintiff's responsive statement pursuant to Local Civil Rule 56.1, he admitted every
fact Defendant set forth in its statement.  However, he made no counterstatement
setting forth additional undisputed facts; instead, in the "Statement of Facts" section of
his opposition Plaintiff included numerous factual assertions, often supported with cites
to record evidence, but with no indication as to whether the fact asserted was in
dispute.  The Court is not required to consider what the parties fail to include in their
Local Civil Rule 56.1 Statements.  *Holtz* v. *Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d
Cir. 2001).  But, because this Court prefers to decide matters on the merits rather than
on technicalities when reasonable and practicable, it will exercise its discretion to
"conduct an assiduous review of the record" in the absence of an affirmative
counterstatement from Plaintiff.  *Id.*  Accordingly, direct citations to the record have
been used where relevant facts were not included, and the Court occasionally cites the

¶ 3).  The second-floor apartment consisted of a single shared bathroom, a shared kitchen, and four rooms that were rented out to various tenants.  (Pl. Opp. 3).[2]  Plaintiff testified that, from the outside, the property at 3321 Seymour Avenue had the appearance of a single-family, two-story home.  (*Id.*). Inside the front door, there was a vestibule with two doors, the one on the left leading to the first-floor apartment, and the one on the right leading to the second-floor apartment.  (*Id.*; *see also* Yalkut Decl. Ex. 2 at 13 (transcript of search warrant application hearing)).  The two doors were unmarked, and each had two locks.  (Pl. Opp. 3).

At the top of the stairs for the second-floor apartment, there was another door with a lock requiring a key.  (Pl. Opp. 3).  This door opened into the shared kitchen, where the bathroom and the doors to some of the rented rooms were visible.  (*Id.*).  At least some of the doors to the rented rooms had locks. (Merriweather Dep. 46).  In his room, Plaintiff had a twin bed, a computer desk, a chair, and a television.  (Pl. Opp. 4).  He kept his room locked; it had both a bolt and a latch.  (*Id.*).  Mail was delivered to the house itself and placed on top of the heating unit in the vestibule for residents to retrieve.  (Merriweather Dep. 50-51).

---

fact section of Plaintiff's opposition as if it were a Local Civil Rule 56.1 counterstatement.

[2]   Insufficient evidence exists in the record for the Court to determine whether this arrangement was legal, or was actually the illegal sublet of rooms in what was intended to be a single-family, four-bedroom residence.  In any event, this open question is immaterial to the resolution of this motion.

## 2.     The Search Warrant

Detective Nelson Mendez of the Narcotics Borough Bronx in the NYPD sought a search warrant of 3321 Seymour Avenue as part of a narcotics investigation in March 2010.  In an Affidavit in Support of Search Warrant (the "Affidavit"), Detective Mendez testified that "JD D-Nice" (with "JD" signifying that the individual was an as-yet-unidentified John Doe, and "D-Nice" signifying the nickname by which the individual was known) was using the "second floor apartment of 3321 Seymour Avenue, Bronx, New York" to store and sell "crack/cocaine"[3] and to conspire to commit those crimes.  (Yalkut Decl. Ex. 2 at 4 (Mendez Affidavit)).  Detective Mendez stated in the Affidavit that a confidential informant (the "CI") with a proven history of reliability had made controlled purchases of crack/cocaine at the subject premises from JD D-Nice on two separate occasions.  (*Id.* at 5-8).  On each of those occasions, the CI had knocked on the white door leading to the second-floor apartment and D-Nice had answered and instructed the CI to follow him to the second-floor apartment.  (*Id.*).  During both purchases, while present inside the second-floor apartment, the CI engaged in crack/cocaine-related conversations with D-Nice before buying the crack/cocaine from him.  (*Id.*).

Detective Mendez further testified in the Affidavit that he had performed a reconnaissance of 3321 Seymour Avenue in order to become familiarized with the location and personally observe the entry door.  (Yalkut Decl. Ex. 2 at 8).

---

[3]     The Court adopts this terminology to refer to the controlled substances that were implicated by the investigation.

He observed a two-story brown-brick private house with a green awning, but did not enter the building because it would jeopardize the secrecy of the investigation.  (*Id.*).  The CI informed him of the vestibule with two white doors, and, further, that the door on the right led to the second-floor apartment.  (*Id.*).

On March 18, 2010, Detective Mendez appeared before a magistrate judge in connection with his warrant application.  (Yalkut Decl. Ex. 2 at 11).  Describing the premises to be searched, which description he explained to the magistrate judge was based on his personal observations *and* information related by the CI, Detective Mendez testified, "[T]he premise[s] is clearly marked 3321.  From the street, as you enter into the vestibule of that first door, there's two doors, and it would be the door on your right that will take you upstairs to the second floor apartment."  (*Id.* at 13).  When the magistrate judge asked whether there was only one apartment on the second floor, Detective Mendez replied, "Yes, sir."  (*Id.*).  On the basis of this testimony and the Affidavit, Detective Mendez obtained a "no knock" search warrant[4] authorizing, *inter alia*, the "search of the second floor apartment of 3321 Seymour Avenue, Bronx, New York" for the following:

> a. crack/cocaine, vials, caps, glassine envelopes, small
>    ziplock-style bags, and other evidence of the possession
>    and distribution of crack/cocaine, including but not
>    limited to paraphernalia used to process and distribute
>    drugs, including but not limited to dilutants and scales,

---

[4]     A no-knock warrant is permitted by statute in New York upon a showing that "the property sought may be easily and quickly destroyed or disposed of."  N.Y. Crim. Proc. Law § 690.35(4)(b)(i).  Detective Mendez had described facts supporting such a showing in the Affidavit.  (*See* Yalkut Decl. Ex. 2 at 8).

counter-surveillance equipment, and records and documents reflecting drug transactions;

b. currency and other evidence of proceeds from drug trafficking, including but not limited to financial records in any format, tending to demonstrate cash transactions or financial transfers derived from the possession of cash currency, money orders, bank receipts, stocks, bonds, bills and receipts for goods and services, documents relating to real estate holdings, and any title or registration to motor vehicles;

c. evidence of ownership and use of the target premises, or the use of property located therein by any person, including but not limited to keys, telephone bills, utility bills, bank statements, leases, deeds, or rent receipts related to the target premises, identification bearing the name or photograph of any person, telephone books, address books, date books, calendars, personal papers, and videotapes and photographs of persons.

(Yalkut Decl. Ex. 3 at 6; *see also* Def. 56.1 ¶ 5).

### 3. Execution of the Warrant

On March 27, 2010, between 7:00 and 7:30 a.m., Plaintiff was sleeping in his bed when police kicked in his door. (Def. 56.1 ¶ 6). The police, officers of the NYPD Narcotics Borough Bronx, were executing the search warrant Detective Mendez had obtained. (*Id.* at ¶ 4). During the execution of the search warrant, and prior to the administration of any Miranda warnings, Plaintiff was asked by the police if he had anything in his room, and Plaintiff stated, "Yes, I have drugs and I have a weapon in the room." (*Id.* at ¶ 7; Pl. 56.1 Opp. ¶¶ 8, 11). Plaintiff informed officers that there was marijuana located "on the side of [his] bed." (Def. 56.1 ¶ 8).[5] Plaintiff also informed the

---

[5]    Plaintiff testified at his deposition that the marijuana was for his own personal use. (Def. 56.1 ¶ 9).

6

officers that he had a knife, and the officers located it on the floor in Plaintiff's room between the bed and the wall.  (*Id.* at ¶¶ 11-12).  The knife had a jeweled handle that was two or three inches long and a blade that was approximately one inch wide and six inches long.  (*Id.* at ¶ 13).  The police recovered both the marijuana and the knife from the same area, between the bed and the wall. (*Id.* at ¶¶ 10, 14; Merriweather Dep. 87-88).  Plaintiff was arrested for criminal possession of marijuana, unlawful possession of marijuana, and two counts of criminal possession of controlled substances.  (Def. 56.1 ¶ 15).

## B.   Procedural Background

The criminal charges against Plaintiff were subsequently dismissed. Plaintiff then filed the Complaint in this action on July 6, 2012, against the City and Detective Mendez.  (Dkt. #1).  Plaintiff's Complaint contains seven counts, three of which — the first, fourth, and seventh — appear to implicate federal law.[6]  The counts are: false imprisonment (arrest), negligent treatment, invasion of privacy, civil rights violation, negligence, prima facie tort, and municipal liability.  (Compl. ¶¶ 16-62).  Within the fourth count, "civil rights violation," Plaintiff purports to bring suit pursuant to both New York State law and the New York State Constitution, as well as pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1988, 28 U.S.C. § 1343, and the Fourth Amendment to the United

---

[6]     Because Plaintiff is counseled, the Court owes him no special solicitude in its review of his pleadings and motion papers.  *See Jackson* v. *Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014) (noting that the concerns in ensuring that *pro se* litigants understand the stakes in summary judgment motions and the solicitude therefore given to them are "simply irrelevant" where a plaintiff is counseled).  Nonetheless, because it is apparent that Defendant considers Plaintiff's "false imprisonment" claim to arise under federal law and not merely state law, the Court construes it similarly.

States Constitution.  (*Id.* at ¶ 35).[7]  Plaintiff's seventh count is a claim for municipal liability brought pursuant to 42 U.S.C. § 1983 and *Monell* v. *Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  (*Id.* at ¶¶ 48-62).

On March 24, 2014, the Court dismissed the Complaint as to Detective Mendez pursuant to Federal Rule of Civil Procedure 4(m), leaving Defendant City as the sole defendant.  (Dkt. #26).  Effectively, because under federal law municipalities cannot be held liable for the acts of their employees under the doctrine of *respondeat superior*, *see Pembaur* v. *City of Cincinnati*, 475 U.S. 469, 478 (1986), this means that Plaintiff's only remaining claims as to the City are a federal claim for a violation of his constitutional rights by a municipal policy or custom and his state law claims.[8]  Pending before the Court is Defendant's motion for summary judgment as to Plaintiff's remaining claims, which was fully briefed as of May 30, 2014.  (Dkt. #29-37).

---

[7]    Many of the federal statutes Plaintiff lists in his Complaint either do not provide Plaintiff with any substantive rights or do not give him a right to sue (notably, one, 42 U.S.C. § 1988, is primarily a fee-shifting statute, and another, 28 U.S.C. § 1343, is a jurisdictional statute).  Only 42 U.S.C. § 1983 and § 1985 provide a plaintiff with a right to sue based on violations of those and other statutes, including 42 U.S.C. § 1981. Accordingly, the Court understands Plaintiff's federal statutory claims to arise under those statutory provisions.

[8]    While federal law does not provide for municipal liability on a theory of *respondeat superior*, under state law municipalities can be held liable on such a theory.  *See Holland* v. *City of Poughkeepsie*, 935 N.Y.S.2d 583, 589 (2d Dep't 2011) ("[U]nlike the claims pursuant to 42 U.S.C. § 1983, a municipality may be held vicariously liable for torts committed by its employee while acting within the scope of his or her employment."); *see also Williams* v. *City of White Plains*, 718 F. Supp. 2d 374, 381 (S.D.N.Y. 2010) (holding that state law tort claims survived summary judgment "due to the potential for vicarious liability for actions of its police officers as its employees").

## DISCUSSION

### A.    The Standard for Summary Judgment Motions

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys* v. *City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  The movant may discharge this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan* v. *N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (finding summary judgment appropriate where the non-moving party fails to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim" (internal quotation marks omitted)).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial" using affidavits or otherwise, and cannot rely on the "mere allegations or denials" contained in the pleadings.  *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323-24; *Wright* v. *Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles* v. *Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)).  Furthermore, "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist."  *Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher* v. *Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (internal quotation marks and citations omitted)); *see also Vargas* v. *Transeau*, 514 F. Supp. 2d 439, 442 (S.D.N.Y. 2007) (observing that "the mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient" to defeat summary judgment (internal quotation marks and citations omitted)), *aff'd sub nom. Vargas* v. *Pfizer, Inc.*, 352 F. App'x 458 (2d Cir. 2009) (summary order).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the

10

movant." *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir.

2003).  However, in considering "what may reasonably inferred" from witness

testimony, the court should not accord the non-moving party the benefit of

"unreasonable inferences, or inferences at war with undisputed facts."  *Berk* v.

*St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 342 (S.D.N.Y. 2005)

(citing *County of Suffolk* v. *Long Island Lighting Co.*, 907 F.2d 1295, 1318 (2d

Cir. 1990)).

## B.    Analysis

### 1.    The Court Grants Summary Judgment as to Plaintiff's State Law Claims

Plaintiff's state law claims are easily resolved, inasmuch as they are both

abandoned and time-barred.  Specifically, Defendant argues that Plaintiff's

state law claims are time-barred because Plaintiff did not file a Notice of Claim

within ninety days of accrual of the action, nor did Plaintiff file the Complaint

within one year and ninety days of that date, as required by New York law.

(Def. Br. 13-15).[9]  In his opposition, Plaintiff does not respond to Defendant's

arguments; he does not put forth any evidence supporting the validity of his

---

[9]    Defendant also urges the Court not to exercise supplemental jurisdiction over Plaintiff's
state law claims, because, Defendant argues, all of Plaintiff's federal claims should be
disposed of on its motion for summary judgment.  (Def. Br. 12-13).  Indeed, in the event
these claims were not abandoned and time-barred, the Court would exercise its
discretion under 28 U.S.C. § 1367 to decline jurisdiction.  *See Pension Benefit Guar.
Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan* v. *Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705, 727 (2d Cir. 2013) ("[I]n the usual case in which all federal-law claims
are eliminated before trial, the balance of factors … will point toward declining to
exercise jurisdiction over the remaining state-law claims." (citation omitted)).  The key
difference, of course, is that because the state law claims *are* abandoned and time-
barred, they are dismissed herein with prejudice, rather than dismissed without
prejudice to permit their refiling in state court.

state law claims; and, indeed, he does not mention those claims.  (*See generally* Pl. Opp.).  Defendant argues from this reticence that Plaintiff has abandoned those claims.  (Def. Reply 10).

As the Second Circuit has remarked, "[A] partial opposition [to a motion for summary judgment] may imply an abandonment of some claims or defenses.  Generally … a partial response reflects a decision by a party's attorney to pursue some claims … and to abandon others."  *Jackson* v. *Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014).  In such a case, where "abandonment by a counseled party is not explicit but such an inference may be fairly drawn from the papers and circumstances viewed as a whole, district courts may conclude that abandonment was intended."  *Id.*

Here, it is clear from the "papers and circumstances viewed as a whole" that Plaintiff has abandoned his state law claims.  *See Jackson*, 766 F.3d at 196.  Plaintiff makes no mention of his state law claims in his opposition to Defendant's motion for summary judgment.  Moreover, Plaintiff's counsel conceded at the March 13, 2014 conference that the state law claims against the City were time-barred, and that the Court would be well within its discretion to dismiss those claims.  (Mar. 13, 2014 Tr. 24-25).  Under these circumstances, the Court concludes that Plaintiff intended to abandon these claims.  Even had he not intended as much, the claims are time-barred as a matter of law.  *See* N.Y. Gen Mun. Law §§ 50-e, 50-i; *Moses* v. *Westchester Cnty. Dep't of Corr.*, 951 F. Supp. 2d 448, 451 (S.D.N.Y. 2013) ("Failure to file a

notice of claim against a governmental subdivision for acts arising out of the state civil rights laws is 'fatal.'" (citation omitted) (collecting cases)).

Accordingly, Defendant's motion for summary judgment is granted with regards to Plaintiff's state law claims.[10]

### 2.     The Court Grants Summary Judgment as to Plaintiff's *Monell* Claim

#### a.     Applicable Law: *Monell* Claims

What is left is a single claim of City liability under *Monell*.  As noted, municipalities may be sued directly for constitutional violations pursuant to 42 U.S.C. § 1983, *Monell*, 436 U.S. at 694 (1978), but cannot be held liable for the acts of their employees under the doctrine of *respondeat superior*, *Pembaur*, 475 U.S. at 478.  To state a claim for municipal liability, a plaintiff must show that a violation of his constitutional rights resulted from a municipal policy or custom.  *Monell*, 436 U.S. at 694.  A plaintiff may establish such a violation in a number of ways, including by presenting evidence of

> [i] an express policy or custom, [ii] an authorization of a policymaker of the unconstitutional practice, [iii] failure of the municipality to train its employees, which exhibits a "deliberate indifference" to the rights of its citizens, or [iv] a practice of the municipal employees that is "so permanent and well settled as to imply the constructive acquiescence of senior policymaking officials."

---

[10]     The second through sixth counts of Plaintiff's Complaint are therefore dismissed in their entirety, as those claims arise only under state law.  Plaintiff's first count, false imprisonment (arrest), is dismissed insofar as it arises under state law.

*Biswas* v. *City of New York*, 973 F. Supp. 2d 504, 536 (S.D.N.Y. 2013)

(considering issue in the context of a motion to dismiss) (quoting *Pangburn* v.

*Culbertson*, 200 F.3d 65, 71-72 (2d Cir. 1999)).[11]

> ### b.    Plaintiff Fails to Demonstrate the Existence of an Underlying Constitutional Violation

Taking the Plaintiff's Complaint and opposition papers together, the

Court understands Plaintiff to posit four potential constitutional violations on

which to predicate his *Monell* claim: (i) the search of Plaintiff's room was a

violation of his Fourth Amendment rights, because the search warrant was

invalid or because the NYPD exceeded the scope of the warrant in executing it

(*see* Pl. Opp. 10-13); (ii) Plaintiff was falsely arrested, giving him a claim under

42 U.S.C. § 1983 for violation of his Fourth Amendment rights (*see* Compl.

¶¶ 16-22); (iii) there was a conspiracy to violate Plaintiff's constitutional rights,

giving him a claim under 42 U.S.C. § 1985 (*see id.* at ¶¶ 34-38); or (iv) Plaintiff

was maliciously prosecuted, giving him a claim under 42 U.S.C. § 1983 for

violation of his Fourth Amendment rights (*see* Pl. Opp. 14-15).  As set forth

herein, each putative predicate fails.[12]

---

[11]    Plaintiff does not allege a failure to train in this case.

[12]    Plaintiff lists 42 U.S.C. § 1981 in his Complaint under "civil rights violation."  Because Plaintiff offers no allegations, much less evidence, in support of such a claim, the Court addresses it only briefly.  To establish a Section 1981 claim, a plaintiff must show: "[i] that [he] is a member of a racial minority; [ii] an intent to discriminate on the basis of race by the defendant; and [iii] that the discrimination concerned one or more of the activities enumerated in Section 1981."  *Lauture* v. *Int'l Bus. Mach. Corp.*, 216 F.3d 258, 261 (2d Cir. 2000).  In his Complaint, Plaintiff does not allege that he was discriminated against, that he is a member of a racial minority, or that there was an intent to discriminate on the basis of race on behalf of Defendant.  (*See generally* Compl.).  Additionally, such a claim can only be brought against a municipality by an action pursuant to 42 U.S.C. § 1983 and *Monell*.  Thus, even if Plaintiff had alleged and supported a Section 1981 claim, it necessarily would fail because, as discussed below, Plaintiff cannot establish an official municipal policy or practice.  *See Payne* v. *N.Y.C.*

i.    **Plaintiff Fails to Demonstrate That the Search Warrant or Search Violated the Fourth Amendment**

Plaintiff both challenges the validity of the search warrant and alleges that the seizure of items ostensibly outside the scope of the warrant violated his Fourth Amendment Rights.[13]

## (A)    Applicable Law

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  The Supreme Court has explained that "[t]he text of the Amendment thus expressly imposes two requirements.  First, all searches and seizures must be reasonable.  Second, a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity."  *Kentucky* v. *King*, 131 S. Ct. 1849, 1856 (2011) (citation omitted).  A search is presumptively reasonable when executed pursuant to a warrant.  A search warrant issued by a neutral magistrate, upon

---

*Police Dep't*, 863 F. Supp. 2d 169, 188 (E.D.N.Y. 2012) ("Section 1981 does not and cannot, within constitutional bounds, impose vicarious liability on municipalities; as such, Section 1981 liability against such entities can be asserted only pursuant to [Section 1983], and even then only in accordance with the well-established requirements promulgated in *Monell*.").

[13]    The Court notes that the Complaint does not allege that the warrant at issue was invalid, nor does it explicitly allege unlawful entry or search.  However, because Defendant does not challenge the sufficiency of the pleadings in this regard, but rather addresses the merits of the position stated in Plaintiff's opposition, the Court does the same.

15

a finding of probable cause, must be afforded great deference and creates a presumption that the officers executing the warrant acted in an objectively reasonable fashion.  *United States* v. *Leon*, 468 U.S. 897, 913-14 (1984); *Illinois* v. *Gates*, 462 U.S. 213, 235-36 (1983); *Golino* v. *City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991); *Bowen* v. *County of Westchester*, 706 F. Supp. 2d 475, 486 (S.D.N.Y. 2010).

The Supreme Court has held that the validity of a warrant is not impaired if it is based on seemingly reliable information that is later found to be erroneous.  *Illinois* v. *Rodriguez*, 497 U.S. 177, 184 (1990); *see also id.* at 188 (holding a search constitutional when "the facts available to the officer[s] ... [would] warrant a man of reasonable caution in the belief that the consenting party had authority over the premises" (internal quotation marks omitted)).  Negligent or otherwise innocent misstatements or omissions in a warrant application do not invalidate the warrant, so long as the incorrect or omitted information does not evidence a reckless or intentional disregard for the truth.  *Franks* v. *Delaware*, 438 U.S. 154, 171 (1978); *accord Golino*, 950 F.2d at 870; *see also United States* v. *Walker*, 534 F.3d 168, 171 (2d Cir. 2008) (noting that minor clerical errors are generally not fatal to a search warrant when the possibility of actual error is eliminated by other information).

"A plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden."  *Rivera* v. *United States*, 928 F.2d 592, 602 (2d Cir. 1991).  Where a magistrate has determined that an affidavit presented to him provides probable cause for the issuance of a warrant, the person

16

challenging the warrant must make a "'substantial preliminary showing' that the affiant knowingly and intentionally, or with reckless disregard to the truth, made a false statement in his affidavit and [that] the allegedly false statement was 'necessary to the finding of probable cause.'" *Id.* at 604 (quoting *Franks*, 438 U.S. at 155-56); *see also Velardi* v. *Walsh*, 40 F.3d 569, 573 (2d Cir. 1994) (finding that unsupported conclusory allegations of falsehood or material omission are insufficient to support a finding that an arrest warrant lacked probable cause).

However, even when a search is conducted pursuant to a valid warrant, police officers must still execute the warrant in good faith and within the confines of the limitations contained in the search warrant. *Vaher* v. *Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 426-27 (S.D.N.Y. 2013); *see also Walter* v. *United States*, 447 U.S. 649, 656 (1980) (plurality opinion) ("When an official search is properly authorized — whether by consent or by the issuance of a valid warrant — the scope of the search is limited by the terms of its authorization."); *United States* v. *Shi Yan Liu,* 239 F.3d 138, 140-41 (2d Cir. 2000) (explaining that "a search that greatly exceeds the bounds of a warrant and is not conducted in good faith is essentially indistinguishable from a general search," which the Fourth Amendment's particularity requirement was designed to prohibit).  The Second Circuit has identified three components to the particularity requirement of the Fourth Amendment: (i) a warrant must identify the specific offense for which the police have established probable cause; (ii) the warrant must describe the place to be searched; and (iii) the

17

warrant must specify the items to be seized by their relation to the designated crimes. *United States* v. *Galpin*, 720 F.3d 436, 445-46 (2d Cir. 2013) (collecting cases).

Finally, the Fourth Amendment does not authorize the seizure of items other than those identified in or reasonably covered by the terms of the search warrant, unless it is "immediately apparent" that such items are contraband or illegal on their face. *Horton* v. *California*, 496 U.S. 128, 135-36 (1990) (citations omitted). "Seizures of property during a search conducted pursuant to a warrant are limited to [i] the items named in the warrant, [ii] any fruits, instrumentalities, or evidence of a crime that are discovered in the course of a search of legitimate scope, and [iii] certain kinds of property for which a special reason for seizure, such as officers' safety or safekeeping of cash, can be shown." *Dale* v. *Bartels*, 732 F.2d 278, 284 (2d Cir. 1984); *see also Rackley* v. *City of New York*, 186 F. Supp. 2d 466, 473 (S.D.N.Y. 2002) (explaining that the Fourth Amendment is designed to prevent the seizure of one item under a warrant that describes a different item (citing *Marron* v. *United States*, 275 U.S. 192, 196 (1927))).

**(B)    The Warrant Was Based on Probable Cause**

Plaintiff argues that the search warrant for the second-floor apartment of 3321 Seymour Avenue was invalid because it was premised on the "false representation that the second floor consisted of only one apartment." (Pl.

Opp. 11).[14]  Defendant counters that there is no evidence that any officer provided false information to the magistrate judge in obtaining the search warrant, and no evidence that the search warrant was improperly issued or executed.  (Def. Reply 5-8).

The Court agrees with Defendant.  Here, the police entered the second-floor apartment and executed the search upon a facially valid warrant: it was issued by a neutral magistrate, was based on probable cause pursuant to Detective Mendez's sworn statements, and specified the place to be searched and the objects to be seized.[15]  Plaintiff's argument that the warrant was invalid is essentially an argument that any warrant that included Plaintiff's room — which is a rented "unit" within the second-floor apartment — lacked probable cause as overbroad.  But great deference is given to a magistrate judge's finding of probable cause, and — particularly given the absence of any knowingly false or misleadingly incomplete statements by Detective Mendez to the magistrate judge — Plaintiff does not carry the "heavy burden" of

---

[14]    Presumably, Plaintiff also intends to make the argument that logically flows from this, namely, that if the police intended to search the entire second floor, they should have obtained a warrant for each room.

[15]    To be sure, Detective Mendez's Affidavit in support of a search warrant refers in passing to narcotics transactions taking place in the "first floor apartment" of the same building. (Yalkut Decl. Ex. 2 at 6-7).  However, the remainder of the Affidavit makes clear that the premises sought to be searched, and the premises at which narcotics trafficking had occurred, was the second-floor apartment.  (*See id.* at 4, 6-7, 8-10; *see also id.* at 12 (explaining to magistrate judge how to access the second-floor apartment)).  *See Velardi*, 40 F.3d at 576 ("Warrants have been upheld despite 'technical errors,' ... when the possibility of actual error is eliminated by other information, whether it be ... supplemental information from an appended affidavit, or knowledge of the executing agent derived from personal surveillance of the location to be searched.").

overcoming the presumptive validity of the probable cause finding here.[16]  *See Rivera*, 928 F.2d at 602; *cf. United States* v. *Clark*, 638 F.3d 89, 96-105 (2d Cir. 2011) (reversing suppression decision of district court; concluding that law enforcement officers had not set forth evidence of "full control" of premises by subject necessary to establish probable cause to search the entirety of a multi-family dwelling, but concluding that *Leon* good-faith exception applied).[17]

Plaintiff argues, "Since Detective Mendez has never personally been on the second floor prior to the execution of the warrant his statement to the magistrate could not have been truthful."  (Pl. Br. 11).  This argument also fails.  It was perfectly permissible — and certainly not reckless — for Detective Mendez to rely on (and to make clear to the magistrate judge that he was relying on) the statements of a CI who had proved reliable on numerous occasions, and whose statements were consistent with the detective's own observations of the exterior of the premises.  *See Lynch ex rel. Lynch* v. *City of Mount Vernon,* 567 F. Supp. 2d 459, 465-66 (S.D.N.Y. 2008) (finding plaintiff

---

[16]    In resolving this motion, the Court declines to credit certain evidence proffered by Plaintiff as proof that Detective Mendez or the NYPD made misrepresentations or omitted material information from the warrant application.  First, the Court will not consider the handwritten diagram included as Exhibit 4 to the Yalkut Declaration, inasmuch as it was not produced during discovery and has not been authenticated.  Second, the Court will not consider Plaintiff's deposition testimony concerning statements by Omar Cook regarding a prior raid at 3321 Seymour Avenue, which is contained in Exhibit 1 to the Yalkut Declaration, inasmuch as such statements are inadmissible hearsay.  *See Delaney* v. *Bank of America Corp.*, 766 F.3d 163, 169-70 (2d Cir. 2014) ("As the district court correctly held, the draft EEOC charge is inadmissible hearsay — an out-of-court statement that Delaney would rely on to show the truth of the matter asserted.  Materials submitted in support of or in opposition to a motion for summary judgment must be admissible themselves or must contain evidence that will be presented in admissible form at trial." (internal citations and quotation marks omitted)).

[17]    Instead, Plaintiff has at best a challenge to the scope of the warrant, discussed *infra*.

did not carry "heavy burden" in challenging warrant, where application based on statement of proven reliable CI who had been to residence one time, even where police did not conduct independent investigation); *see also Speights* v. *City of New York*, No. 98 Civ. 4635 (NG) (JMA), 2001 WL 797982, at *4 (E.D.N.Y. June 18, 2001) ("The state judge who issued the warrant was entitled to credit the testimony of the CI who appeared before him.").  The CI told Detective Mendez there was one apartment on the second floor, and Detective Mendez's own observation of the premises did not give him reason to doubt that.  Plaintiff has offered no evidence that the Detective Mendez knowingly and intentionally, or with reckless disregard for the truth, made a false statement to the magistrate judge.  The warrant, therefore, was based on probable cause as required by the United States Constitution.

### (C)    The Execution of the Search Was Objectively Reasonable

Assuming the truth of Plaintiff's contention that the second-floor apartment is a multi-unit dwelling, the Court finds that reasonable jurors could not disagree as to whether the execution of the search of the second floor was "objectively reasonable."[18]  The objective facts available to the officers at the time of execution suggested that the second-floor apartment was a single unit.  *See Maryland* v. *Garrison*, 480 U.S. 79, 88 (1987) (finding the execution

---

[18]    Plaintiff admits as undisputed that he rented a room "within the second floor apartment."  (*See* Pl. 56.1 Opp. ¶ 3).  While Plaintiff makes the argument in his opposition that it is a "false representation" that there was only "one apartment on the second floor" (Pl. Br. 11), he does not point to any evidence to support this assertion. At most, Plaintiff establishes that he paid rent on a single room or "unit" *within* the second-floor apartment.

of search of entire third floor was "objectively understandable and reasonable" where facts available to officers suggested no distinction between two separate apartments).  Similar to the warrant at issue in *Garrison*, the warrant here specified the entire second-floor apartment as a single unit.  The configuration of the second-floor apartment does not suggest that it is a multi-unit dwelling: after entering two external doors, the police would have encountered a single kitchen, a single bathroom, and four doors that led to four bedrooms.  The only fact Plaintiff has pointed to that might alert police that the bedrooms were separate "units" is that they each had locks, but still this does not necessarily indicate separate units where there are no other indicia suggesting as much. *See Birthwright* v. *City of New York*, No. 01 Civ. 3940 (CBM), 2005 WL 2179072, at *4-7 (S.D.N.Y. Sept. 8, 2005) (finding objectively reasonable execution of warrant where very few internal indicators of multiple residency; there were multiple rooms, some of which were locked, no separate doorbells, one mailbox, one entrance, and no apartment numbers).

On this point, the case is similar to *United States* v. *Kyles*, 40 F.3d 519 (2d Cir. 1994), where the Second Circuit declined to suppress evidence retrieved from defendant's bedroom, absent evidence that law enforcement was aware that the defendant's bedroom was a residence separate from that for which a warrant had been issued:

> The officers' authority to search premises described in a warrant is not unbounded.  If, during the search, the officers become aware that the warrant describes multiple residences, the officers must confine their search to the residence of the suspect.  Factors that indicate a separate residence include separate access

> from the outside, separate doorbells, and separate mailboxes.
>
> Geoffrey [Kyles, one of the defendants] concedes that the warrant to search 11-A Malcolm Court was valid. He argues, however, that the warrant did not authorize the agents to search his bedroom because they knew that it was a separate residence. This argument is unconvincing. The FBI agents had no reason to believe that Geoffrey's room was a separate residence: it had neither its own access from the outside, its own doorbell, nor its own mailbox. Mrs. Kyles's statement that Geoffrey was the only person with a key to the room did not, by itself, elevate the bedroom to the status of a separate residential unit. Because the bedroom was not a separate residence, the agents had probable cause to believe that the room contained evidence of the bank robbery.
>
> Accordingly, the agents were authorized to break the lock and search the room, and the district judge properly admitted the evidence found inside.

*Id.* at 524 (internal citations omitted).

Conversely, this case is readily distinguishable from *United States* v. *Voustianiouk*, 685 F.3d 206 (2d Cir. 2012), in which the Second Circuit reversed the denial of a suppression motion on the basis that law enforcement officers had exceeded the permissible scope of the warrant. The Court noted, in arriving at its decision, that (i) the officers had seized child pornography from a second-floor apartment based on search warrant that only authorized the search of first-floor apartment; (ii) the affiant officer had withheld the target/defendant's name from magistrate judge in search warrant application, and (iii) the totality of the evidence indicated that the officers had "searched an apartment other than the one that the magistrate intended to authorize them to search." *Id.* at 210-17. Because, in sharp contrast to *Voustianiouk*, there is

no indication that the officers here searched a premises other than that which they had been authorized to search, and because the officers' execution of the search was objectively reasonable, it did not violate Plaintiff's constitutional rights.

Next, Plaintiff argues that the seizure of Plaintiff's small quantity of marijuana was not authorized by the warrant and therefore violated his Fourth Amendment rights to be free from unlawful search and seizure.  (Pl. Opp. 11). As established above, the police were reasonably executing a validly issued warrant when they searched Plaintiff's room.  They were accordingly permitted to look in any place within the premises where the subjects of the warrant — crack/cocaine, related paraphernalia, and specified documents — might be found.  *See United States* v. *Ross*, 456 U.S. 798, 820-21 (1982) ("A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found.... Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found."); *United States* v. *Salas*, No. 07 Cr. 557 (JGK), 2008 WL 4840872, at *11 (S.D.N.Y. Nov. 8, 2008) ("The particularity requirement does not mandate that the warrant provide a narrower area to be searched than that given in the warrant here, because the officers were searching for, among other things, narcotics, which were sufficiently small to be concealed anywhere on the premises." (citations omitted)); *cf. United States* v. *Riley*, 906 F.2d 841, 845 (2d Cir. 1990) ("[A] warrant authorizing seizure of records of criminal activity

24

permits officers to examine many papers in a suspect's possession to determine

if they are within the described category."). The knife and the marijuana seized

in Plaintiff's room were located on the floor beside his bed, between the bed and

the wall.[19] This area — not even a closed container — was certainly within the

purview of the warrant, and therefore searching that area did not effect a

constitutional violation.

Moreover, the officers asked Plaintiff whether he had in the room any

weapons, which might pose a threat to the officers' safety, or any drugs, which,

generically, were a subject of the search warrant. Plaintiff said yes to both, and

indicated that they were located in the same place, beside his bed. Police were

permitted to confiscate the knife in the interest of the "officers' safety." *See*

*Dale*, 732 F.2d at 284; *see United States* v. *Estrada*, 430 F.3d 606, 610 (2d Cir.

2005) ("Where the public safety exception applies, a defendant's statement —

and the physical evidence recovered as a result of that statement — may be

admitted into evidence at trial." (citing *New York* v. *Quarles*, 467 U.S. 649, 657-

60 & n.9 (1984)). And once officers encountered the marijuana — a controlled

substance the possession of which is a crime — located in an area within the

scope of a valid warrant and next to the knife, they were permitted to seize that

"evidence of a crime." *Dale*, 732 F.2d at 284. Therefore, reasonable jurors

could only find that the officers' seizure of the marijuana, despite the fact that

---

[19]      Plaintiff testified that these objects were located in the narrow space between his bed
         and the wall, such that they were not visible in plain view. (Merriweather Dep. 87-88).

25

it was not the drug specified in the warrant, was not a violation of Plaintiff's constitutional rights.[20]

### ii.      Plaintiff Has No Claim for False Arrest

In his Complaint, Plaintiff alleges that he was falsely imprisoned or arrested when he was immobilized by police during the search and subsequently arrested.  (Compl. ¶¶ 16-22).  In its motion for summary judgment, Defendant argues that this claim must fail because the NYPD had the right to secure the premises while they executed the warrant, and subsequently had probable cause to arrest Plaintiff once they discovered he possessed a controlled substance, marijuana.  (Def. Br. 6-8)

Plaintiff simply does not respond: in his opposition, he does not address Defendant's arguments, or the false arrest claim, at all.  In the first instance, therefore, Plaintiff has abandoned his claim for false arrest.  *See Jackson*, 766 F.3d at 196.  But even had he not, Plaintiff's claim fails as a matter of law on the record before the Court.  The Supreme Court has held that "officers executing a search warrant for contraband may detain the occupants of the premises while a proper search is conducted … [and] may take reasonable action to secure the premises and to ensure their own safety and the efficacy of the search."  *Los Angeles County, California* v. *Rettele*, 550 U.S. 609, 613-14

---

[20]     Plaintiff also suggests that because he did not meet the description of the individual named in the *arrest* warrant police were also out to execute that day, somehow the search warrant was invalid.  (Pl. Opp. 10).  This argument is a red herring.  Once the officers uncovered marijuana in Plaintiff's possession, the possession of a controlled substance gave officers probable cause to arrest Plaintiff.  Indeed, Plaintiff admits that the marijuana was his and that it was for his own personal use.  (Pl. 56.1 Opp. ¶ 9).

(2007).  Plaintiff has proffered no evidence in support of an argument that his

pre-arrest detention during the execution of the search warrant was

unreasonable in violation of the law.

Once the officers discovered Plaintiff was in possession of marijuana, a

crime under New York Penal Law § 221.05, they had probable cause to arrest

him.  *See Gonzales* v. *City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013)

("[P]robable cause to arrest exists when the officers have knowledge or

reasonably trustworthy information of facts and circumstances that are

sufficient to warrant a person of reasonable caution in the belief that the

person to be arrested has committed or is committing a crime." (quoting

*Weyant* v. *Okst*, 101 F.3d 845, 852 (2d Cir. 1996))).  Plaintiff does not dispute

that he was in possession of marijuana.  As a matter of law, therefore, the

police had probable cause to arrest him.  *Weyant*, 101 F.3d at 852 ("The

question of whether or not probable cause existed may be determinable as a

matter of law if there is no dispute as to the pertinent events and the

knowledge of the officers.").[21]  It is well established that "the existence of

probable cause to arrest constitutes justification and is a complete defense to

an action for false arrest, whether the action is brought under state law or

---

[21]    Even were the Court to have found a Fourth Amendment violation in the issuance or
execution of the search warrant, which it does not, Plaintiff would not be able to recover
compensatory damages stemming from his subsequent arrest and incarceration under
42 U.S.C. § 1983.  *See Townes* v. *City of New York*, 176 F.3d 138, 148 (2d Cir. 1999)
(concluding that "[v]ictims of unreasonable searches or seizures may recover damages
directly related to the invasion of their privacy...; but such victims cannot be
compensated for injuries that result from the discovery of incriminating evidence and
consequent criminal prosecution").

under § 1983." *Id.* (internal citations and quotation marks omitted).

Accordingly, Plaintiff cannot establish a false arrest claim as a predicate

constitutional violation for his *Monell* claim.

### iii.    Plaintiff Has No Claim for Conspiracy

In his Complaint, Plaintiff lists 42 U.S.C. § 1985, which provides a cause

of action for a conspiracy to violate constitutional rights, as a basis for his

claim of "civil rights violation." (Compl. ¶¶ 34-38).  In its motion for summary

judgment, Defendant contends not only that there is no evidence supporting

Plaintiff's conspiracy claim, but also that he has not even alleged a prima facie

case.  (Def. Br. 8-10).  Again, Plaintiff fails to rebut Defendant's arguments or

put forth any evidence supporting his conspiracy allegation.  Thus, his

conspiracy claim is deemed abandoned.  *See Jackson*, 766 F.3d at 196.

Even were that claim not abandoned, Defendant is correct that Plaintiff

has failed to make out a prima facie case of conspiracy.  To establish a prima

facie case under 42 U.S.C. § 1985(3), a plaintiff must demonstrate: (i) a

conspiracy or agreement between defendants; (ii) the intent to deprive plaintiff

of the equal protection of the laws or the equal privileges and immunities under

the laws; (iii) an act in furtherance of the conspiracy; and (iv) a deprivation of

plaintiff's rights.  *Thomas* v. *Roach*, 165 F.3d 137, 146 (2d Cir. 1999).  The

conspiracy must be motivated by some class-based invidious discriminatory

animus behind the conspirators' conduct.  *Id.*

Plaintiff has put forward no evidence suggesting the existence of an

agreement between defendants or an intent to deprive Plaintiff of equal

28

protection, nor has he identified any specific act in furtherance of any purported conspiracy.  Further, as discussed throughout this Opinion, Plaintiff has not demonstrated any unlawful deprivation of his rights.  Finally, while Plaintiff announces for the first time in his opposition papers (and with no citation to admissible evidence) that he is a member of a protected class, he nowhere states, or even hints, that the acts of which he complains were animated by discriminatory motive.  In short, Plaintiff's claim fails because he fails to allege a conspiracy to deprive him of his civil rights.  *See Straker* v. *N.Y.C. Transit Auth.*, 340 F. App'x 675, 676-77 (2d Cir. 2009) (summary order) (affirming district court's grant of motions to dismiss and for summary judgment where Plaintiff failed to allege elements of Section 1985 conspiracy); *see also Herrmann* v. *Moore*, 576 F.2d 453, 459 (2d Cir. 1978) (holding that "there is no conspiracy [under § 1985(3)] if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment").  Thus, Plaintiff cannot sustain his *Monell* claim on the basis of a conspiracy to violate his constitutional rights under 42 U.S.C. § 1985.

### iv.    Plaintiff Cannot Now Raise a Claim for Malicious Prosecution

In his opposition, Plaintiff argues that he "has a valid federal malicious prosecution claim." (Pl. Opp. 14).  Defendant counters that Plaintiff did not plead a cause of action for malicious prosecution and that he cannot now, for the first time in his opposition to summary judgment, insert a new claim.  (Def.

Reply 3-4).  Moreover, Defendant argues, Plaintiff has not set forth a prima facie case of malicious prosecution.  (*Id.* at 4-5).

Defendant is correct: Plaintiff did not plead a cause of action for malicious prosecution in his Complaint, and he cannot now inject it into this case in a brief in opposition to summary judgment.  *See Thomas* v. *Egan*, 1 F. App'x 52, 54 (2d Cir. 2001) (summary order) ("A claim must be set forth in the pleadings, in order to give defendants fair notice of the nature of the plaintiff's claim.... Thus, it is inappropriate to raise new claims for the first time in submissions in opposition to a summary judgment motion." (citations omitted)).  In such a situation, a district court could grant a plaintiff leave to amend his complaint, but it also may review the claim on the merits.  *Id.*  In this case, because of the insufficiency of Plaintiff's new claim, the Court elects to do the latter.

In order to allege a prima facie case of malicious prosecution under 42 U.S.C. § 1983, a plaintiff must demonstrate: (i) the initiation or continuation of a criminal proceeding against plaintiff; (ii) termination of the proceeding in plaintiff's favor; (iii) lack of probable cause for commencing the proceeding; and (iv) actual malice as a motivation for defendant's actions.  *Manganiello* v. *City of New York*, 612 F.3d 149, 161 (2d Cir. 2010).  Additionally, a plaintiff must allege, "that there was [] a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights."  *Rohman* v. *N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000).

As with a claim for false arrest, probable cause is a complete defense to a claim for malicious prosecution. *Manganiello*, 612 F.3d at 161-62. Notably, however, "[t]he probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases." *Stansbury* v. *Wertman*, 721 F.3d 84, 95 (2d Cir. 2013); *see also Rounseville* v. *Zahl*, 13 F.3d 625, 629-30 (2d Cir. 1994) ("In the context of a malicious prosecution claim, probable cause under New York law is 'the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of.'" (quoting *Pandolfo* v. *U.A. Cable Sys. of Watertown*, 568 N.Y.S.2d 981, 982 (4th Dep't 1991))). The determination of probable cause in a malicious prosecution claim is "assessed in light of the facts known or reasonably believed at the time the prosecution was initiated, as opposed to at the time of arrest." *Drummond* v. *Castro*, 522 F. Supp. 2d 667, 677-78 (S.D.N.Y. 2007) (collecting cases).

Because the Court has already found that there was probable cause to arrest Plaintiff, in order to prevail on his malicious prosecution claim, Plaintiff must show that the discovery of some intervening fact made the probable cause "dissipate" between the time of the arrest and the commencement of the prosecution. *Lowth* v. *Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996), amended (May 21, 1996) ("In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact." (citing *Callan* v. *State*, 73 N.Y.2d 731 (1988))).

31

Defendant does not contest that the first two elements of a prima facie case are apparent on the record: a criminal prosecution was commenced against Plaintiff and it was terminated in his favor (that is, it was dismissed). (*See* Yalkut Decl. Ex. 5).  However, as Defendant argues, there was probable cause to arrest Plaintiff based on his unlawful possession of marijuana.[22] Plaintiff has pointed to no facts to show that probable cause dissipated between the time of his arrest and his prosecution.  Indeed, Plaintiff does not even allege that it did.  All Plaintiff says in relation to this claim is, "[P]laintiff's Fourth Amendment rights are implicated under the facts and circumstances presented.  Consequently, the plaintiff has a valid federal malicious prosecution claim."  (Pl. Opp. 14).  Plaintiff does not specify what "facts and circumstances" give rise to his malicious prosecution claim.  Such allegations do not state a prima facie case for malicious prosecution, and are far too conclusory to defeat summary judgment.  Accordingly, Plaintiff cannot sustain his *Monell* claim on the basis of a malicious prosecution claim.

### c.   Plaintiff Fails to Demonstrate the Existence of any Municipal Policy, Practice, or Custom

The preceding analysis makes plain that Plaintiff has failed to establish a predicate constitutional violation sufficient to sustain a *Monell* claim against

---

[22]   The Second Circuit — in a decision that exists in some tension with the *Townes* decision discussed *supra* — suggested that a defendant could not rely on evidence obtained in violation of a plaintiff's Fourth Amendment rights to demonstrate probable cause in the malicious prosecution context.  *Boyd* v. *City of New York*, 336 F.3d 72, 76-78 (2d Cir. 2003); *see also Gannon* v. *City of New York*, 917 F. Supp. 2d 241, 245 (S.D.N.Y. 2013) (collecting inconsistent district court opinions following *Boyd* and *Townes*).  However, for the reasons stated in the text, the Court does not find a Fourth Amendment violation in connection with the recovery of the marijuana from Plaintiff's bedroom.

Defendant.  *See Monell*, 436 U.S. at 694 (holding that to state a claim for municipal liability, a plaintiff must show that a violation of his constitutional rights resulted from a municipal policy or custom).  Defendant's motion for summary judgment must be granted on that basis alone.  However, even if Plaintiff had established a violation of his constitutional rights, he does not allege any facts — much less provide any evidence — of any improper practice or custom endorsed by Defendant.  This is a separate and independent basis for granting the motion.

Plaintiff argues that "the defendant City of New York has on numerous occasions, set forth in the complaint where the defendant City has settled claims based upon the very allegations set forth: fabricating evidence against innocent persons erroneously arrested, imprisoning persons wrongly apprehended and imprisoning innocent persons notwithstanding the existence of credible evidence which would exonerate the accused of any wrongdoing." (Pl. Opp. 13).  First of all, there is no evidence on the record before this Court that any of the three factual scenarios Plaintiff argues are policies of the City is in any way implicated in this case: there is no evidence that officers fabricated evidence, that Plaintiff was wrongly apprehended, or that there was credible evidence that would exonerate Plaintiff.  He admitted to possessing the marijuana for which he was arrested.

What is more, the record is devoid of evidence of any policy, custom, or practice on the part of the City.  Plaintiff refers to a list of cases contained in his Complaint, which are apparently civil rights actions the City purportedly

settled with other plaintiffs.  (*See* Compl. ¶ 53; Pl. Opp. 13).  Simply referring to a list of cases and asserting they are evidence of a policy or custom is a conclusory allegation that cannot survive summary judgment without more. *See Hicks*, 593 F.3d at 166 ("Mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist."); *see also Ortiz* v. *City of New York*, No. 12 Civ. 3118 (HB), 2012 WL 6200397, at *8 (S.D.N.Y. Dec. 12, 2012) (dismissing conclusory allegations of municipal custom as devoid of factual support); *Plair* v. *City of New York*, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) (dismissing *Monell* claim where complaint "lack[ed] sufficient factual details concerning *Monell* liability and contain[ed] boilerplate allegations of unconstitutional policies and practices").

Therefore, even assuming *arguendo* that the absence of an underlying constitutional violation did not preclude a *Monell* claim against the City in this case, Defendant would still be entitled to summary judgment on that claim because of the absence of any evidence of an unconstitutional policy, practice, or custom by the City as it relates to the issues in this case.

### CONCLUSION

To adopt journalistic parlance, the Court's extensive Fourth Amendment analysis buries the lede:  Summary judgment is warranted because Plaintiff offered only conclusory pleadings, and demonstrably insufficient evidence, of a City custom, practice, or policy that operated to violate his constitutional rights.  He cannot therefore establish liability under *Monell*.  In addition, as set

forth above, Plaintiff has failed to allege a constitutional violation on which his Section 1983 claim can be predicated.  This, too, compels summary judgment.

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED in its entirety.  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:      January 5, 2015
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge